**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Vonnie Darin Darby, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.  1:09-cv-004 |
| | ) | |
| Tim Schuetzle, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Vonnie Darin Darby, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No: 1:09-cv-005 |
| | ) | |
| Tim Schuetzle, Warden, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Plaintiff, Vonnie Darin Darby, is an inmate at the North Dakota State Penitentiary (NDSP). He initiated the above-entitled civil rights actions on February 3, 2009, by lodging complaints and applications to proceed in *forma pauperis*.  The cases were ordered consolidated and are before the court for an initial review as mandated by 28 U.S.C. §1915A.  Also, there is pending motions to amend the complaints in both cases.

In addition to these complaints, Darby has also recently filed a number of other actions challenging various conditions of his confinement.

I.      **BACKGROUND**

This consolidated action arises out of Darby's refusal to submit to a tuberculosis (TB) screening, or what Darby characterizes as a "needle assault."  According to the complaints, Darby

was administratively disciplined for his refusal to submit to the TB test and the penalty he received

included 15 days of administrative segregation/disciplinary detention and the loss of one month of

accumulated good time.

> In Case No.  1:09-cv-004, Darby alleges:

> In Jan.  2008, Plaintiff was issued a Write-up Report and found guilty of Disobeying Orders for refusing to subject himself to an (sic) needle assault for a Tuberculosis (TB) test.  He was punished and subjected to Cruel & Unusual Punishment, denial of equal protection, self-incrimination, denial of due process, and physical & mental abuse and injury, and double jeopardy claims.

> Plaintiff had taken (2) two TB tests in Sept.  2007.  The mandatory federal law requires that such testing be conducted every (12) twelve months.  Plaintiff had another (8) months before it was mandatory for him again.  He does not like to be assaulted by needles.  He was willing to have TB test by X-ray, but Defendant was bent on forcing the needle assault.  His retaliation (sic) for refusing  was 15 days in DD lock-up and 6 days of that under MO lock-up until he gave in to have the test. The conditions and treatment of both lock-up status was cruel and unusual punishment, physical & mental abuse and injuries.

> Lost of Good-time: Base on the annual mandatory 12 months required law, Plaintiff was not and should not have been subjected to another TB test for (8) eight months. Therefore the (1) one months loss of good-time is illegal.

( Docket No.  2-2).  He alleges the following in Case No:

> In September 2007, Inmate Darby allowed the NDSP Health Service, (HS), to conduct their annual Tuberculosis (TB) test.  He was given two and was negative on both.  On Jan.  2008, the Warden ordered that Darby give another TB test simply because the institution was conducting a TB test on the entire population, (Pop). Darby refused citing he did not want to be assaulted with a niddle (sic) and that the mandatory annual 12 month required TB test time frame had not arrived yet for him. It had only been 4 months since his last 2 tests.  For his refusal, he was given a conduct report, placed under DD and MO lock-up for 15 days, 6 of them under MO, and loss of one-month good-time.  While in both types of lock-up's, he was subjected to harsh and cruel and unusual punishment, treatment and conditions. After 6 long painful days of such conditions in treatment that MO isolation has to offer and being told that he would not get out, citing "Pop" medical concerns, until he agrees to have the show, allowed the staff to assault him with the needle after they refused to conduct his test via x-ray.  The Plaintiff should not have been subject to another TB test for another 8 months.  The Defendants desire to include him in the

institution "convenience sweep" does not over-ride the Plaintiff's State or Federal Const'al (sic) rights or the Yearly Annual Mandate Federal Law.  Because the Defendant choose not to conduct the early TB test via x-ray and subjected the Plaintiff to retaliation, loss of good-time, cruel and unusual punishment, physical & mental abuse, the Plaintiff Equal Protection, Due Process, Self-Incrimination and Cruel & Unusual Punishment State & Federal Rights were violated.  And because of the needle assault, loss of good-time and treatment and conditions from the retaliation of being placed in DD & MO lock-up, the Plaintiff suffered physical and mental pain & suffering and injuries.  Double jeopardy claim as well.

(Docket No.  2-2).

In both complaints, Darby requests compensation for his pain and suffering, punitive damages, and reimbursement for his time and expenses.  In Case No.  1:09-cv-004, he requests the restoration of lost good-time, but states in Case No.  1:09-cv-005 that he is not seeking its restoration.  In fact, that is the only real difference between the two complaints.

## II.    STANDARDS GOVERNING INITIAL REVIEW

Congress enacted the  Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit.  Jones v. Bock, __ U.S. __,127 S.Ct. 910, 914 (2007); Woodford v. Ngo, __ U.S.__, 126 S.Ct. 2378, 2382 (2006).  One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit.  28 U.S.C. § 1915A.  In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.  Id.

 In enacting the PLRA, Congress chose not to impose a heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 does not impose any such requirements.

Jones v. Bock, __ U.S. __,127 S.Ct. 910, 919 (2007).  Consequently, to state a cognizable claim, the

complaint needs only to meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it

contains "a short and plain statement of the claim showing that the pleader is entitled to relief."

Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2202 (2007) (per curiam).  In addition, when a

prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it

to a less stringent standard than what would be required of attorneys.  E.g., Erickson v. Pardus, 127

S.Ct. at 2202.  The court may not dismiss a *pro se* complaint unless it "appears beyond doubt that

plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v.

Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); see also Haley v. Dormire, 845 F.2d 1488, 1490 (8th

Cir. 1988).

Nevertheless, even though the  pleading requirements are minimal and complaints are to be

liberally construed, this does not mean the court must accept anything and everything that is filed

by a *pro se* prisoner.  In enacting the screening requirement, Congress expected it to be more than

a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with

those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not

obviously baseless, frivolous, or malicious.

"A complaint is frivolous if it lacks an arguable basis in law or fact." Martinez v. Turner,

977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)).  "It lacks

an arguable basis in law if the claim is based on an indisputable meritless legal theory." Id.  And,

in terms of whether there is an arguable basis in fact,  the court may disregard any factual allegations

that are clearly fanciful, fantastic, or delusional.  See Denton v. Hernandez, 504 U.S. 25, 32-34

(1992); Edwards v. Snyder, 478 F.3d 827, 229-830 (7th Cir. 2007) (discussing the difference between factual and legal frivolousness).

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it.  See Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S.Ct. 1955, 1965 n.3 (2007).  At the very least, even *pro se* prisoners must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964).   In the case of an action for a violation of federal civil rights under 42 U.S.C. § 1983,  this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim.  West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997).  Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities for damages must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability.  Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990); Martin v. Sargent, 780 F.2d 1334, 1337-39 (8th Cir.1985).      Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim.  The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law.  E.g., Edwards v. Snyder, 478 F.3d at 830;

Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[1]

## III.   DISCUSSION

### A.   Plaintiff's complaints are "Heck" barred

The Supreme Court has made clear that a prisoner cannot make a claim for relief in a § 1983 action, for which success would imply the invalidity of confinement or the duration of the prisoner's sentence, without first exhausting habeas remedies.  Edwards v. Balisok, 520 U.S. 641 (1997); Preiser v. Rodriguez, 411 U.S. 475 (1973); see Wilkson v. Dotson, 544 U.S. 74, 78-82 (2005); Heck v. Humphery, 512 U.S. 477 (1994); Wolff v. McDonnell, 418 U.S. 539 (1974).  In summarizing this line of cases (i.e., Preiser, Wolff, Heck, and Balisok), the Supreme Court stated the following in Dotson:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

544 U.S. 78-82.

---

[1] In Edwards v. Snyder, the Seventh Circuit stated the following:

Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.  See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir. 2006).

478 F3d at 830.

In both of the consolidated cases, Darby challenges the outcome of the disciplinary action arising out of his refusal to take the TB test.  And, even though he states in Case No.  1:09-cv-005 that he is not seeking restoration of his good time, his claims are <u>Heck</u> barred in both cases nevertheless, since success in either would necessarily demonstrate the invalidity of the taking away of the good time.[2]

Consequently, Darby's complaints must be dismissed for failure to state a claim.  <u>See</u> <u>id</u>; <u>Armentrout v. Tryra</u>, 155 F.3d 1023 (table), 1999 WL 86355, at *1 (8th Cir. 1999) (per curiam) (holding that an action dismissed without prejudice under <u>Heck</u> counts as strike under 28 U.S.C. , citing both Eleventh and Fifth Circuit precedent).

**B.      Plaintiff's complaints are also subject to dismissal without prejudice for failure to state a cognizable claim for violation of federal rights under § 1983**

**1.      Due Process**

Darby does not challenge the administration of TB testing *per se.*  Rather, he takes issue with the frequency with which the NDSP screened for TB as to him.  More particularly, his complaint is that he was required to participate in a prison-wide screening four months after his last TB test, which he contends is more frequent than what he characterizes as the twelve-month norm mandated by federal regulation.

---

[2]  The Eighth Circuit has not yet ruled on whether a prisoner can waive his right to restoration of his good-time credits to avoid the <u>Heck</u> bar. <u>See</u> <u>Peralta v. Vasquez</u>, 467 F.3d 98, 104-106 (2nd Cir.2006) (allowing a New York prisoner to waive his right to restoration of his good-time credits to avoid the Heck bar premised upon the federal and state courts in New York having adopted the doctrine of judicial estoppel, which the court held guaranteed the waiver being given effect in subsequent federal and state court proceedings).  In this case, however, Darby's statement that he is not seeking restoration of his good-time in Case No. 1:09-cv-005 is not an affirmative waiver.  Further, it is clear that he has not otherwise waived his right to seek restoration of his good-time since he explicitly pleads for its restoration in Case No. 1:09-cv-004.

"Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system." Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 982 (8th Cir. 2004). "Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." Id. (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" Id. ( quoting Turner v. Safley, 482 U.S. 78, 89)). When determining the reasonableness of the regulation at issue, courts consider the following four factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) how the accommodation of the asserted constitutional right will affect guards, other inmates, and the allocation of prison resources; and (4) whether there are alternatives that fully accommodates the prisoner "at de minimis cost to valid penological interests." Turner v. Safley, 482 U.S. at 89-91).

There is little debate regarding the health threat TB poses to both inmates and prison personnel.[3] And there is widespread agreement that penal institutions have a compelling interest in stopping its spread. See e.g., Sample v. Angelone, 1999 WL 52347, at * 1 (4th Cir. 1999) (per curiam) (affirming district court conclusion that "regulation requiring PPD testing of inmates and

---

[3] "[T]estimony submitted to Congress indicates that infectious diseases develop commonly in prisons and spread quickly because of high population density." Hasenmeier-McCarthy v. Rose, 986 F.Supp. 464. 467 (S.D. Ohio 1998). "The President of the National Commission on Correctional Health Care testified that tuberculosis is 500 percent more common in prisons than in the general population." Id. "Further, tuberculosis, in addition to being highly infectious, can require years of treatment and in its most severe form can lead to death." Id.

prison staff for [TB] exposure is reasonably related to the legitimate penological objective of ensuring the health and welfare of inmates"); Washington v. Cambra, 165 F.3d 920 (table), 1998 WL 840946, at *1 (9th Cir. 1998) (unpublished memorandum opinion) (detection and containment of tuberculosis is undeniably a legitimate penological goal); McCormick v. Stalder, 105 F.3d 1059, 1060 (5th Cir. 1997) (prisons have a compelling interest in prevent the spread of tuberculosis); Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996) (correctional officers have an affirmative obligation to protect inmates from infectious disease); Thompson v. Los Angeles, 885 F.2d 1439, 1447 (9th Cir.1989) ("We find, however, the County's interest of diagnosing severe medical problems to prevent transmission of serious disease among the general jail population is sufficiently compelling to preclude a finding that such searches are unreasonable within the meaning of the Fourth Amendment."); Neal v. Watts, 2008 WL 74831, at *4 (D.D.C. 2008); Johnson v. Sherman, 2007 WL 1029856, at * 5 (E.D. Cal. 2007) (stating it would be irresponsible for prison not to require TB testing); Dunn v. Zenk, 2007 WL 2904170, at *3 (N.D. Ga. 2007). In fact, prison officials are subject to potential liability if they fail to properly screen prisoners for communicable diseases such as TB. See, e.g., DeGidio v. Pung, 920 F.2d 525, 528-533 (8th Cir.1990) (holding that prison officials' reckless response to tuberculosis outbreak amounted to deliberate indifference in violation of the Eighth Amendment); Rhinehart v. Gomez, 1995 WL 364339, at * 4( N.D. Cal. 1995) ("Defendants' failure to administer TB tests to all inmates may have subjected them to claims that they deliberately were indifferent to the inmates' health.").

As a consequence, the courts have held the involuntary administration of TB testing does not offend the Constitution. E.g., Washington v. Cambra, supra, at *2 (holding that the involuntary administration of TB testing did not offend the Due Process Clause or the Eighth Amendment);

Dunn v. Zenk, supra, at *4; Rhinehart v. Gomez, supra, at *4.  The same is true for placing a

prisoner who refuses screening in administrative segregation or imposing disciplinary action. See,

e.g., Sample v. Angelone, supra, (placement in administrative segregation);  Mack v. Campbell,

1991 WL 243569 (6th Cir.1991) (administrative segregation and administrative disciplinary

conviction for refusing tuberculosis screening did not violate due process).   Also, the courts have

held that prison officials are not required to consider the alternative of a chest x-ray to other forms

of testing.  E.g., Neal v. Watts, supra, at *4 (prison officials not required to provide the option of an

x-ray); Johnson v. Sherman, supra, at 4 (not required to use a chest x-ray because it will only

diagnosis active TB and skin test is required to determine whether an inmate has been exposed to

TB); Hasenmeier-McCarthy v. Rose, 986 F. Supp. 464, 468 (S.D. Ohio 1998) (same); Karolis v.

New Jersey Dept. of Corrections, 935 F.Supp. 523, 529 (D.N.J. 1996) (same).  Finally, the Ninth

Circuit in Washington v. Cambra found that there was no constitutional violation in forcing a

prisoner to submit to a second TB test twelve weeks after an earlier test given the fact that TB is a

highly contagious and dangerous disease.  1998 WL 840946, at *1.

        Based on the foregoing, the mere fact Darby was required to participate in a prison-wide

screening for TB four months after his last test is not enough to make out a claim of violation of his

due process rights.

                    **2.        Equal Protection**

        Darby claims that his equal protection rights have been violated.  The equal protection clause

directs state actors to treat similarly situated people alike.  See Cleburne v. Cleburne Living Ctr.,

473 U.S. 432, 439 (1985).  "To succeed on an equal protection claim, [Darby] . . . must show that

he is treated differently than a similarly situated class of inmates, that the different treatment burdens

10

one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Murphy v. Missouri Department of Corrections, 372 F.3d 979, 984 (8th Cir. 2004).

In this case, Darby's complaint fails to state any basis for why the TB testing or the disciplinary action against him could be considered discriminatory. If anything, the allegations make clear that he was treated the same as the other inmates in that the entire prison population was subject to the screening. Further, the foregoing cited cases make clear that TB testing, as well as disciplinary action to enforce compliance, bear a rational relation to a legitimate penal interest. Consequently, Darby's complaints fail to set forth a cognizable equal protection claim. Cf. McCauley v. Dormire, 245 Fed.Appx. 565, 566-567, 2007 WL 2404729, at *1 (8th Cir. 2007).

### 3.      Cruel and Unusual Punishment

Darby complains that he was subjected to cruel and unusual punishment in that he was segregated from the general population and held in "lockup" for a period of fifteen days as a consequence of his refusal to submit to TB tests.

Conditions of confinement may violate the Eighth Amendment if they satisfy two criteria. Farmer v. Brennan, 511 U.S. 825, 834 (1994). First, the conditions alleged must be sufficiently serious such that the official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. Second, the officials responsible for these conditions must exhibit "deliberate indifference" to the inmate's health and safety. Id.

The fact that Darby may have been held in administrative segregation/disciplinary detention for a period of fifteen days does not in and of itself constitute cruel and unusual punishment. See Blizzard v. Watson, 892 F. Supp. 587 (D. Del. 1995) (finding  that ninety days of punitive

segregation did not constitute cruel and unusual punishment); <u>see</u> <u>also</u> <u>Jones-Bey v. Wright</u>, 944 F.Supp. 723, 732 (N.D. Ind. 1996) ( holding that the forty-day medical isolation of an inmate who had refused to submit to tuberculosis (TB) screening test did not amount to cruel and unusual punishment). In fact, the length of segregation here is not even sufficient to invoke a liberty interest under <u>Sandin v. Conner</u>, 515 U.S. 472, 483-87 (1995).

Also, there is nothing in Darby's complaint to suggest that he was deprived of identifiable human needs during this time. The mere allegation that he was subjected to cruel and unusual punishment is insufficient to state a claim. <u>See</u> <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. at 1964-65 & n.3 (complaint must contain more than labels and conclusions or "formulaic recitation of the elements of a cause of action"); <u>Potter v. Tontitown</u>, 2009 WL 56969, at *1 (8th Cir. 2009) (unpublished per curiam).

Finally, while it appears Darby's Eighth Amendment claim relates only to his treatment while in administrative/disciplinary confinement, it is also clear that TB testing *per se* does not violate the Eighth Amendment. <u>See</u>, e.g., <u>Washington v. Cambra</u>, 1998 WL 840946, at *2; cf., <u>Parks v. McCoy</u>, 35 Fed. Appx. 239, 2002 WL 449945 (7th Cir.2002) (inmate forced to take tuberculosis medication against his will based on a misdiagnosis did not state a constitutional claim for relief); <u>McCormick v. Stalder</u>, 105 F.3d at 1061 (involuntary treatment for TB held not to violate the Eighth Amendment). In fact, as already observed, prison officials may be subject to liability under the Eighth Amendment if they fail to test for TB and the failure amounts to deliberate indifference for the health of the inmates.

### 4.     Double Jeopardy

Darby claims that his double jeopardy rights were violated.  Alone such a declaration is insufficient to sustain a constitutional claim.  The Double Jeopardy Clause protects against three distinct abuses, none of which are at issue here: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.  United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

### 5.     Federal law

Darby alleges in his complaint that there is a "federal mandate" that prevents TB testing more than once a year.  Darby does not cite the law, however, and the court is not aware of any federal statute or regulation that would limit TB testing of state prisoners to only once a year.  In fact, the federal Bureau of Prisons in its regulations states that it tests inmates annually and also upon initial incarceration and when otherwise deemed necessary by health services staff that an inmate may be at risk for infection.  28 C.F.R. § 549.12(b).  Also, the regulation provides that inmates who refuse  may be disciplined and subjected to involuntary testing.  Id.

### 6.     Conclusion

Darby has pled enough in his two complaints to make clear that he does not have a cognizable claim for a violation of his federal constitutional or statutory rights under § 1983.  Consequently, his complaints are subject to dismissal for this reason as well as on account of the Heck bar.

### C.    Motions to amend

Darby has filed motions to amend the two complaints that clarify he is seeking compensatory damages, punitive damages, and injunctive relief.  These motions do not change the fact that he has failed to state a claim for which relief can be granted.

## IV.    <u>RECOMMENDATION</u>

The undersigned **RECOMMENDS** the following:

1.      That the complaints in this consolidated action be dismissed without prejudice pursuant to the authority granted by 28 U.S.C. § 1915A(b) on the grounds that they fail to state a claim.

2.      That the pending motions to amend be dismissed as moot.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 19th day of February, 2009.

*/s/  Charles S.  Miller, Jr.*
Charles S.  Miller, Jr.
United States Magistrate Judge
